UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF<br>AMERICA | )<br>)<br>) | CASE NO. **CR 10320 RGS** |
| | ) | VIOLATIONS: |
| v. | ) | |
| | ) | 18 U.S.C. §371 (Conspiracy) |
| JAMES DESIMONE, | ) | 18 U.S.C. §1028A (Aggravated Identity Theft) |
| DENNIS SAVARESE, | ) | 18 U.S.C. §1028(a)(7) (Identity Fraud) |
| DONALD DESIMONE, Sr., | ) | 18 U.S.C. §1029(a)(2) (Access Device Fraud) |
| DONALD DESIMONE, Jr., | ) | 18 U.S.C. §§1028(b)(5), 1029(c)(1)(C), |
| RICHARD REGNETTA, and | ) | 982(a)(2)(B), 981(a)(1)(C), 28 U.S.C. §2461(c) |
| ARTHUR RIZZO, | ) | (Criminal Forfeiture) |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury charges:

### INTRODUCTION

At all times relevant to the charges in this Indictment:

1.      JAMES DESIMONE, DONALD DESIMONE, Sr., DONALD DESIMONE,

Jr., and RICHARD REGNETTA lived in Revere, Massachusetts. ARTHUR RIZZO lived

in East Boston, Massachusetts. DENNIS SAVARESE lived in Miami, Florida and Austin,

Texas. JAMES DESIMONE and DONALD DESIMONE, Jr. are brothers; DONALD

DESIMONE, Sr. is their father.

2.      Beginning by at least June 2005, SAVARESE regularly stole credit cards from

lockers in health clubs throughout the United States. He then gave the names on the stolen

credit cards to RIZZO or JAMES DESIMONE, who arranged to have fake state

identification cards made bearing these names and the photographs of the defendants.

SAVARESE and one or more of the Massachusetts defendants then flew to a city somewhere in the United States, where they met and drove together to a horse racing track. At the track, the defendants took large cash advances on the credit cards, using the fake ID's as identification. They then used some of this cash to bet at the tracks and to pay for their travel expenses, and they kept the rest for their personal benefit.

3.      This scheme victimized more than 350 credit card holders and generated more than $350,000 for the defendants.

2

## COUNT ONE
(Conspiracy)
18 U.S.C. § 371

4.      From approximately June 1, 2005 through approximately August 2, 2007, in the District of Massachusetts and elsewhere,

JAMES DESIMONE, DENNIS SAVARESE, DONALD DESIMONE, Sr.,

DONALD DESIMONE, Jr., RICHARD REGNETTA, ARTHUR RIZZO,

and others known and unknown to the Grand Jury, did knowingly conspire to commit the following offenses against the United States:

> a.      Aggravated Identity Theft (18 U.S.C. §1028A) – knowingly, and with intent to defraud, transferring, possessing and using, without lawful authority, a means of identification of another person in connection with, and with the intent to commit, wire fraud and access device fraud.
>
> b.      Identity Fraud (18 U.S.C. §1028(a)(7)) – knowingly, and with intent to defraud, transferring, possessing and using, without lawful authority, a means of identification of another person with the intent to commit, and aid and abet, access device fraud and wire fraud.
>
> c.      Access Device Fraud (18 U.S.C. §1029(a)(2)) – knowingly and with intent to defraud, trafficking in and using one or more unauthorized access devices during a one-year period, and by such conduct obtaining anything of value aggregating $1,000 or more during that period.

3

d.      Wire Fraud (18 U.S.C. §1343) – having devised and executed a scheme
to defraud, and to obtain money and property by means of false and
fraudulent pretenses, representations, and promises, transmitting and
causing to be transmitted, in interstate commerce, wire
communications, including writings, signals and sounds, for the
purpose of executing the scheme to defraud.

Manner and Means of the Conspiracy

5.      SAVARESE was responsible for obtaining credit cards for the group. He did
this primarily by stealing them from lockers in the men's locker rooms at Bally Total Fitness
("Bally") gyms throughout the country. As a Bally member, SAVARESE was entitled to go
to any of Bally's 400 locations, and he visited a significant number of these gyms during the
course of the conspiracy. SAVARESE was also a member of 24 Hour Fitness, another
nationwide health club chain, and he stole credit cards from lockers in these gyms as well.

6.      SAVARESE was able to get into lockers that gym patrons were using because
he had a book, published by the Locksmith Association, listing serial numbers and matching
combinations for Master Lock combination locks. He used the information in the book to
open lockers secured by Master Locks, stole credit cards from lockers he opened, but
otherwise left the victims' lockers intact, and put the lock back on the locker. The victims,
therefore, often did not notice for some time that they were missing a credit card; and when
they did notice, they generally believed that they had lost the card.

4

7.    Most weeks, SAVARESE stole between five and ten credit cards from as many as three different gyms. He then spoke by telephone to RIZZO or JAMES DESIMONE and gave them the names on the stolen credit cards.

8.    RIZZO or JAMES DESIMONE then bought, from a store in Boston, a fake state ID card to go with each stolen credit card. While the name on each ID matched the name on one of the credit cards, the photo on each ID was a photo, which the store kept on file, of one of the defendants. The fake ID's purported to be from a variety of states, but the address information on all of them was fabricated. JAMES DESIMONE and RIZZO generally bought the ID's on Friday afternoons.

9.    On Friday night or Saturday morning, SAVARESE and one or more of the Massachusetts defendants flew to a city somewhere in the United States. The destination city varied each week, but all were near horse racing tracks. The defendants then met, rented a car, and drove to the track. SAVARESE gave each defendant one or more of the stolen credit cards, each of which matched the name on a fake ID bearing that defendant's photo. JAMES DESIMONE gave SAVARESE one or more fake ID's with his photo and the name from one of the stolen credit cards that SAVARESE was to use.

10.    At the race track, the defendants each attempted to take cash advances from the stolen credit cards, using the fake ID's as identification. They chose to take these cash advances from race tracks because the large dollar amounts were not unusual, because the tracks allowed cash advances from credit cards without the use of a personal identification

5

number ("PIN"), and because they liked betting on horse racing.

11.     If a credit card was declined, the defendants discarded it and tried another stolen card (and matching license) if they had one. The cash advances were generally between $1,000 and $9,000, but occasionally were more than $20,000.

12.     The defendants sometimes used the cash to place bets at the race tracks. They generally also used this cash to pay for their plane tickets and hotel rooms. They sometimes used the stolen credit cards directly to pay for these travel expenses, as well as for expensive dinners and other personal expenses.

13.     After each weekend, the Massachusetts defendants flew back to Massachusetts, while SAVARESE generally flew to another city with Bally gyms, from which he could steal more credit cards.

14.     The defendants repeated this pattern most weekends from at least June, 2005 through August 2, 2007.

    Overt Acts

The defendants committed the following overt acts within the District of Massachusetts and elsewhere:

    November 17-21, 2005

15.     On November 17, 2005, SAVARESE went to the Bally gym in Greenbelt, Maryland. There, he stole an American Express card from M.S's locker.

16.     On the same day, RIZZO bought, from the store in Boston, a fake Connecticut

6

state ID card bearing the name M.S. and the photo of DONALD DESIMONE, Jr.

17. DONALD DESIMONE, Jr. then flew to Florida, where, on November 19 and 20, 2005, he used M.S.'s American Express card for a variety of travel expenses, including a one-way ticket back to Boston.

18. On November 21, 2005, DONALD DESIMONE, Jr. used M.S.'s American Express card to buy gas in Revere, Massachusetts.

May 11-13, 2006

19. On May 11, 2006, SAVARESE went to the Bally gym in Federal Way, Washington. There, he stole Visa cards in the names of S.F. and P.E.

20. On May 12, RIZZO went to the store in Boston and bought fake Michigan state ID cards bearing the names S.F. and P.E. The S.F. card had a photo of JAMES DESIMONE, and the P.E. card had a photo of SAVARESE.

21. JAMES DESIMONE then flew to the state of Washington, where he met SAVARESE, and the two went to the Emerald Downs race track, in Auburn, Washington.

22. There, JAMES DESIMONE used S.F.'s Visa card and ID to take a $2,000 cash advance.

23. SAVARESE used P.E.'s Visa card and ID to take a $2,000 cash advance.

August 7-12, 2006

24. Between August 7 and 11, 2006, SAVARESE went to the Bally gym in Egan, Minnesota, where he stole a Discover card from T.K.'s gym locker.

7

25.    On August 11, 2006, RIZZO went to the store in Boston and bought a fake Michigan state ID card bearing the name T.K. and a photo of DONALD DESIMONE, Sr.

26.    JAMES DESIMONE and DONALD DESIMONE, Sr. then flew to the California, where they met SAVARESE, and the three went to the Del Mar Thoroughbred race track, in Del Mar, California.

27.    There, DONALD DESIMONE, Sr. used T.K.'s Discover card and ID to take four cash advances, totaling approximately $5,080.

28.    When DONALD DESIMONE, Sr. returned to Massachusetts, he cut T.K.'s Discover card and ID into pieces and discarded them in his trash.

June 25-30, 2007

29.    Between June 25 and 29, 2007, SAVARESE went to the 24 Hour Fitness gym in San Jose, California, where he stole a Visa card from S.P. During this week, SAVARESE also stole a Mastercard from R.J.

30.    On June 29, 2007, JAMES DESIMONE went to the store in Boston and bought two fake Massachusetts ID cards – one bearing the name S.P. and a photo of JAMES DESIMONE and one with the name R.J. and a photo of REGNETTA.

31.    JAMES DESIMONE and REGNETTA then flew to the state of Washington, where they met SAVARESE, and the three went to the Emerald Downs race track, in Auburn, Washington.

32.    There, JAMES DESIMONE used S.P.'s Visa card and ID to take three cash

8

advances, totaling approximately $7,500.

33.    REGNETTA then brought R.J.'s MasterCard back to Massachusetts, where he used it to buy gas in Revere and for purchases at a drug store in Chelsea.

July 13-14, 2007

34.    On July 13, 2007, SAVARESE went to the Northwest Crossing Bally gym, in Houston, Texas, where he stole a Visa card from T.M's locker.

35.    The same day, JAMES DESIMONE went to the store in Boston and bought fake New York ID card with his photo and the name T.M.

36.    JAMES DESIMONE flew to Arizona, where he met SAVARESE, and they then went to the Phoenix Greyhound race track.

37.    There, JAMES DESIMONE used T.M.'s Visa card and ID to take a $2,000 cash advance.

August 2-3, 2007

38.    On August 2, 2007, SAVARESE went to the West University Bally gym, in Houston, Texas, where he stole a MasterCard from G.C.'s locker.

39.    The same day, JAMES DESIMONE went to the store in Boston and bought fake Connecticut ID card with SAVARESE's photo and the name G.C. as well as one with his own photo and the name C.B.

40.    JAMES DESIMONE and SAVARESE then both flew to Kansas City, Missouri, where they met and then drove to the Prairie Meadows Racetrack and Casino, in

9

Altoona, Iowa.

41.     There, JAMES DESIMONE used a Visa card with C.B.'s name and the fake

Connecticut ID to take two cash advances for a total of $4,000.

42.     SAVARESE used G.C.'s MasterCard and matching fake ID to take a $950

advance.

All in violation of 18 U.S.C. § 371.

10

## COUNTS TWO—TWENTY-THREE
### (Aggravated Identity Theft – 18 U.S.C. §1028A)

43.   The Grand Jury realleges and incorporates by reference paragraphs 1-3 and 5-42 of this Indictment, and further charges that:

44.   On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants listed below did knowingly transfer, possess, and use, in or affecting interstate commerce, without lawful authority, a means of identification of another person – to wit, the individual's name – during and in relation to the commission of access device fraud (in violation of 18 U.S.C. §1029(a)(2)) and wire fraud (in violation of 18 U.S.C. §1343):

| Count | Defendant | Date | Victim |
|-------|-----------|------|--------|
| 2 | DONALD DESIMONE, Jr. | 11/17/05 | M.S. |
| 3 | DONALD DESIMONE, Jr. | 3/31/06 | G.L. |
| 4 | DONALD DESIMONE, Sr. | 5/5/06 | R.C. |
| 5 | ARTHUR RIZZO | 5/5/06 | R.C. |
| 6 | DENNIS SAVARESE | 5/12/06 | P.E. |
| 7 | JAMES DESIMONE | 5/12/06 | S.F. |
| 8 | ARTHUR RIZZO | 5/12/06 | S.F. |
| 9 | JAMES DESIMONE | 6/2/06 | F.T. |
| 10 | DONALD DESIMONE, Sr. | 8/11/06 | T.K. |
| 11 | ARTHUR RIZZO | 8/11/06 | T.K. |
| 12 | DENNIS SAVARESE | 9/15/06 | D.A. |
| 13 | ARTHUR RIZZO | 9/15/06 | D.A. |

11

| 14 | DONALD DESIMONE, Sr. | 9/15/06 | J.P. |
|----|----------------------|---------|------|
| 15 | JAMES DESIMONE | 3/30/07 | J.B. |
| 16 | RICHARD REGNETTA | 3/30/07 | R.M. |
| 17 | RICHARD REGNETTA | 4/20/07 | E.M. |
| 18 | JAMES DESIMONE | 5/4/07 | J.M. |
| 19 | JAMES DESIMONE | 6/29/07 | S.P. |
| 20 | RICHARD REGNETTA | 6/29/07 | R.J. |
| 21 | JAMES DESIMONE | 7/13/07 | T.M. |
| 22 | JAMES DESIMONE | 8/2/07 | C.B. |
| 23 | DENNIS SAVARESE | 8/2/07 | G.C. |

All in violation of 18 U.S.C. §§1028A and 2.

12

## COUNTS TWENTY-FOUR – TWENTY-FIVE
(Identity Fraud)
18 U.S.C. §1028(a)(7)

45.     The Grand Jury realleges and incorporates by reference paragraphs 1-3 and 5-42 of this Indictment, and further charges that:

46.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants listed below knowingly, and with intent to defraud, transferred, possessed and used, in and affecting interstate commerce, without lawful authority, a means of identification of another person – to wit, an individual's name – with the intent to commit, and aid and abet, access device fraud (in violation of 18 U.S.C. §1029(a)(2)) and wire fraud (in violation of 18 U.S.C. §1343), and, as a result of the offense, the defendant, or any other individual committing the offense, obtained something of value aggregating $1,000 or more during a 1-year period:

| Count | Defendant | Date | Victim |
|---|---|---|---|
| 24 | DENNIS SAVARESE | 11/17/05 | M.S. |
| 25 | DENNIS SAVARESE | 7/13/07 | T.M |

All in violation of 18 U.S.C. §§1028(a)(7) and 2.

13

## COUNTS TWENTY-SIX – TWENTY-EIGHT
(Access Device Fraud)
18 U.S.C. §1029(a)(2)

47. The Grand Jury realleges and incorporates by reference paragraphs 1-3 and

5-42 of this Indictment, and further charges that:

48. On or about the date listed below, in the District of Massachusetts and

elsewhere, the defendants listed below, knowingly and with intent to defraud, trafficked in

and used one or more unauthorized access devices during a one-year period, and by such

conduct obtained anything of value aggregating $1,000 or more during that period:

| Count | Defendant | Time Period | Access Devices |
|-------|-----------|-------------|----------------|
| 26 | DONALD DESIMONE, Jr. | 11/17/05-11/17/06 | American Express card in the name of M.S.<br>Visa card in name of G.L. |
| 27 | JAMES DESIMONE | 6/2/06-6/2/07 | Visa card in the name of F.T.<br>MasterCard in the name of J.B.<br>MasterCard in the name of J.M. |
| 28 | RICHARD REGNETTA | 3/30/07-8/2/07 | Visa card in the name of R.M.<br>MasterCard in the name of E.M.<br>MasterCard in the name of R.J. |

All in violation of 18 U.S.C. §§1029(a)(2) and 2.

14

FORFEITURE ALLEGATIONS
18 U.S.C. §1028(b)(5)
18 U.S.C. § 1029(c)(1)(C)
18 U.S.C. §982(a)(2)(B)
18 U.S.C. §981(a)(1)(C)
28 U.S.C. §2461(c)
(Criminal Forfeiture)

49.     Upon conviction of one or more of the aggravated identify theft offenses
alleged in Counts 1-23 of this Indictment,

JAMES DESIMONE, DENNIS SAVARESE, DONALD DESIMONE, Sr.,
DONALD DESIMONE, Jr., RICHARD REGNETTA, ARTHUR RIZZO,

defendants herein, shall forfeit to the United States: (1) any personal property used or
intended to be used to commit the offense, pursuant to Title 18, United States Code, Section
1028(b)(5); (2) any property constituting, or derived from, proceeds obtained directly or
indirectly, as the result of one or more of the offenses, pursuant to Title 18, United States
Code, Section 982(a)(2)(B); and (3) any property, real or personal, which constitutes or is
derived from proceeds traceable to one or more of the offenses, pursuant to Title 18, United
States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). Such
property includes, but is not limited to, at least $350,000.00 in United States currency.

48.     Upon conviction of one or more of the access device fraud offenses alleged in
Counts One and 26-28 of this Indictment,

JAMES DESIMONE, DENNIS SAVARESE, DONALD DESIMONE, Sr.,
DONALD DESIMONE, Jr., RICHARD REGNETTA, ARTHUR RIZZO,

defendants herein, shall forfeit to the United States: (1) any personal property used or

15

intended to be used to commit the offense, pursuant to Title 18, United States Code, Section 1029(c)(1)(C); (2) any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of one or more of the offenses, pursuant to Title 18, United States Code, Section 982(a)(2)(B); and (3) any property, real or personal, which constitutes or is derived from proceeds traceable to one or more of the offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). Such property includes, but is not limited to, at least $350,000.00 in United States currency.

49.    If any of the property described in paragraphs 1 or 2 above, as a result of any act or omission by the defendants --

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty,

it is the intention of the United States, pursuant to Title 18, United States Code, Sections 1028(g), 1029(c)(2) and/or 982(b)(1), and Title 28, United States Code, Section 2461(c), all of which incorporate Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described above.

All pursuant to Title 18, United States Code, Sections 981, 982, 1028, 1029 and Title 28, United States Code, Section 2461.

16

A TRUE BILL

Foreperson of the Grand Jury

Adam J. Bookbinder
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS                September 26, 2007

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk

17